**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00409-CRS-CHL**

**LISA R.,[1]**                                                                                              **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                                **Defendant.**

**REPORT AND RECOMMENDATION**

Before the Court is the Complaint filed by Plaintiff Lisa R. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 12.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 13, 17.) Claimant did not file a reply, and her time to do so has expired. Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

**I.      FINDINGS OF FACT**

On or about July 17, 2021, Claimant protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on March 30, 2018. (R. at 11, 79-80, 87-88, 95-96, 105-06, 209-20.) Claimant had previously filed applications for DIB and SSI on August 23, 2019, and received an unfavorable decision. (*Id.* at 58-78.) In relevant part, Administrative Law Judge ("ALJ") Neil Morholt ("ALJ Morholt") found that Claimant retained the ability to do a limited range of light work as follows:

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently balance. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, and scaffolds. She can occasionally use foot controls and push/pull with the bilateral lower extremities. She can frequently reach overhead bilaterally. She can frequently be exposed to extreme heat and extreme cold, humidity, dusts, odors, fumes, gases, other pulmonary irritants, vibration, unprotected heights, and moving mechanical parts. She can understand, remember, and carry out simple, routine tasks in a routine work setting, having minimal variations and little independent judgment, for extended two-hour periods before the need for a regularly scheduled break. She can have occasional interaction with supervisors, coworkers, and the general public.

(*Id.* at 66.) Because there was other work available in significant numbers in the national economy that Claimant could perform, ALJ Morholt found that Claimant was not disabled from March 30, 2018, through the date of his February 16, 2021, decision. (*Id.* at 72-73.)

On May 19, 2022, ALJ Dwight D. Wilkerson ("ALJ Wilkerson") conducted a hearing on Claimant's applications. (*Id.* at 39-57.) In a decision dated July 22, 2022, ALJ Wilkerson engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 8-34.) In doing so, ALJ Wilkerson made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023. (*Id.* at 14.)

2. The claimant has not engaged in substantial gainful activity since March 30, 2018, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, Morton's neuroma of the right foot, COPD, obstructive sleep apnea (OSA), obesity, depressive disorder, and posttraumatic stress disorder (PTSD). (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 15.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can

        frequently balance. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, and scaffolds. She can occasionally use foot controls and push/pull with the bilateral lower extremities. She can frequently reach overhead bilaterally. She can frequently be exposed to extreme heat and extreme cold, humidity, dusts, odors, fumes, gases, other pulmonary irritants, vibration, unprotected heights, and moving mechanical parts. She can understand, remember, and carry out simple, routine tasks in a routine work setting, having minimal variations and little independent judgment, for extended two-hour periods before the need for a regularly scheduled break. She can have occasional interaction with supervisors, coworkers, and the general public. The claimant can stand and walk for 4 hours total in an 8-hour workday, for up to 30 minutes at a time. (*Id.* at 17.)

6.    The claimant is unable to perform any past relevant work. (*Id.* at 26.)

7.    The claimant . . . was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (*Id.*)

8.    The claimant has a limited education. (*Id.*)

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*)

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 30, 2018, through the date of this decision. (*Id.* at 28.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on June 2, 2023. (*Id.* at 1-7, 206-08, 326-31.) At that point, ALJ Wilkerson's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2023); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Claimant requested an extension of time to file a civil action, which the Appeals

Council granted. (R. at 35-38.) Accordingly, Claimant timely filed this action on August 4, 2023. (DN 1.)

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2023).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

4

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2023). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2023).

performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Claimant's Contentions

Claimant's sole argument is that ALJ Wilkerson erred in the treatment afforded to the opinion of her primary care physician, Monalisa M. Tailor, M.D. ("Dr. Tailor"). (DN 13; DN 13-1, at PageID # 880-84.)

The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2023). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2023).

weighed the factors of relationship with the claimant,[4] specialization, and other factors.[5] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case,

---

[4] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Here, Dr. Tailor completed a "Medical Source Statement" form on May 4, 2022, in which she stated,

> Based on medical findings, it is my opinion that this patient is LIMITED to the following level of work:
>
> _X_ SEDENTARY WORK. Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

(R. at 842.) Though the form contained a section for "additional comments," Dr. Tailor left that blank. (*Id.*)

As a starting point, the undersigned notes that Dr. Tailor's opinion was predominantly a conclusory statement on an issue that the applicable regulations categorize as "[e]vidence that is inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (2023). The regulations provide in relevant part that "[s]tatements about what [a claimant's] residual functional capacity is using [the] programmatic terms about the functional exertional levels in Part 404,

8

Subpart P, Appendix 2, Rule 200.00 instead of descriptions about [a claimant's] functional abilities and limitations" are the statements on issues reserved for the Commissioner's determination; these statements are, thus, "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled" such that an ALJ is not required to "provide any analysis about how [he or she] considered such evidence in [his or her] determination or decision, even under § 404.1520c" or § 416.920c, the regulations applicable to an ALJ's consideration of opinion evidence discussed above. 20 C.F.R. §§ 404.1520b(c)(3)(v), 416.920b(c)(3)(v). The term "sedentary work" is one such term. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Thus, ALJ Wilkerson was not required to specifically discuss Dr. Tailor's conclusion that Claimant was limited to sedentary work in his decision.

The Commissioner urged the Court to go a step further and argued that Dr. Tailor's check-box form did not even qualify as a medical opinion that ALJ Wilkerson was required to evaluate pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. (DN 17, at PageID # 902-03.) The regulations define "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in" a number of listed abilities that include a claimant's ability to perform the physical, mental, and other demands of work activities and ability to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2023). While the Commissioner is correct that the form utilized by Dr. Tailor does not appear designed to solicit the type of medical opinion defined by the regulation, because ALJ Wilkerson's discussion treated Dr. Tailor's statement as an opinion, the undersigned will do the same. If the undersigned reads generously the description of sedentary work on the form Dr. Tailor signed, the form can be construed as Dr. Tailor's opinion that Claimant can only frequently lift, carry, push, or pull up to

9

ten pounds and should be sitting "most of the time" but could occasionally walk or stand. (R. at 842.) The undersigned will consider ALJ Wilkerson's discussion and its compliance with the requirements of 20 C.F.R. §§ 404.1520c, 416.920c with this opinion in mind.

In his decision, ALJ Wilkerson found Dr. Tailor's opinion not persuasive. (*Id.* at 25.) He noted that though Dr. Tailor was Claimant's primary care provider and had "longitudinal knowledge of the claimant's overall health impairments," "her examination findings did not support limiting the claimant to sedentary work." (*Id.*) ALJ Wilkerson also observed that "[t]here were inconsistencies between [Dr. Tailor's] examination findings, and the examination findings from orthopedic and neurosurgery specialists" and that in particular her conclusion was not consistent with that of the state agency medical consultants. (*Id.*) Claimant challenged this discussion as insufficient to comport with the articulation requirements of 20 C.F.R. §§ 404.1520c, 416.920c. In particular, she criticized the lack of specificity in ALJ Wilkerson's discussion, arguing that he should have mentioned the specific examination findings of Dr. Tailor that were inconsistent with a restriction to sedentary work and should have pointed out the specific findings of the other specialists that were inconsistent with Dr. Tailor's opinion. (DN 13-1, at PageID # 880-84.) But to accept Claimant's position would both require the undersigned to hold ALJ Wilkerson to a higher standard than that prescribed by the regulations and require the undersigned to ignore the remainder of ALJ Wilkerson's decision. Claimant cited no authority requiring the undersigned to do either. The undersigned's analysis below will thus consider ALJ Wilkerson's decision as a whole and, in particular, ALJ Wilkerson's formulation of Claimant's RFC as one cohesive narrative. Reading ALJ Wilkerson's analysis of Dr. Tailor's opinion in context, the undersigned finds that his discussion comports with the regulatory requirements.

10

As to the supportability factor, which relates to the "objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)," ALJ Wilkerson's conclusion that Dr. Tailor's opinion was not supported by her own examination findings is well-founded in both ALJ Wilkerson's discussion and the record. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). ALJ Wilkerson's discussion of Dr. Tailor's opinion came near the end of ALJ Wilkerson's approximately ten-page discussion of Claimant's RFC. (R. at 17-26.) As part of that discussion, he discussed not only Claimant's own testimony regarding her symptoms and limitations but also summarized at length relevant portions of Claimant's medical records from April 17, 2019, through January 14, 2022. (*Id.* at 18-23.) He also summarized certain records from Dr. Tailor. He noted that Dr. Tailor was Claimant's primary care provider who treated her for hypertension, COPD, chronic low back pain, and depression. (*Id.* at 20 (citing *id.* at 479-63).) He summarized that during an August 26, 2020, exam, Claimant reported neck pain but Dr. Tailor documented normal range of motion and no tenderness in Claimant's back. (*Id.* at 20 (citing *id.* at 504).) He noted that Dr. Tailor referred Claimant for an x-ray of her cervical spine, which showed cervical spondylosis at C5-C6 with mild narrowing of the neuroforamina. (*Id.* at 20 (citing *id.* at 505, 611).) He also summarized a January 4, 2022, visit with Dr. Tailor at which Claimant had sprained her right ankle, was using crutches, and also reported chronic dyspnea. (*Id.* at 23 (citing *id.* at 735).) Dr. Tailor documented normal pulmonary effort and that Claimant was in no respiratory distress but also ordered a chest x-ray that showed no active disease in Claimant's chest. (*Id.* at 23 (citing *id.* at 735, 742).) Having reviewed Dr. Tailor's records, the undersigned finds the examples cited by ALJ Wilkerson to be illustrative of the relevant findings. The record contained approximately twelve visits by Claimant to Dr. Tailor but none contained limitations on Claimant's ability to walk, stand, lift, carry, push, or pull, and the visits often focused on

11

Claimant's anxiety and depression.[6] (*Id.* at 491-94, 503-05, 512-15, 532-38, 548-52, 554-58, 565-67, 575-78, 579-81, 583-86, 588-92, 734-37.) Several visits documented normal range of motion in Claimant's back and/or neck and normal gait. (*Id.* at 493, 504-05, 514, 534, 590.) The ones that did not contain normal findings contained no objective findings regarding Claimant's back, neck, or gait. (*Id.* at 548-52, 554-58, 565-67, 575-78, 579-81, 583-86, 734-37.) While ALJ Wilkerson did not discuss all these examples in his analysis, he was not required to provide such a comprehensive summary in order for his discussion of the supportability factor to comport with the regulatory requirements. He said more than enough for the undersigned to trace the path of his reasoning and to conclude that substantial evidence supports the same. Thus, the undersigned finds no error in ALJ Wilkerson's analysis of the supportability factor as it relates to Dr. Tailor's opinion.

As to the consistency factor, which concerns the relation of a medical source's opinion to "the evidence from other medical sources and nonmedical sources in the claim," ALJ Wilkerson's conclusion that Dr. Tailor's opinion was inconsistent with both the findings and opinions of other providers is likewise well-documented in ALJ Wilkerson's discussion of Claimant's RFC. 20 C.F.R. §§ 404.1520(c)(2), 416.920(c)(2). In the same discussion referenced above wherein ALJ Wilkerson discussed Dr. Tailor's relevant findings, ALJ Wilkerson also discussed the relevant findings of numerous other providers, including the orthopedic and neurosurgery specialists ALJ Wilkerson mentioned. (*Id.* at 19-23.) While the undersigned will not repeat the individual findings herein, they are exactly the type of findings Claimant criticized ALJ Wilkerson for not including in his discussion of the persuasiveness of Dr. Tailor's opinion several pages later in his decision.

---

[6] The Claimant's brief focused solely on ALJ Wilkerson's treatment of Dr. Tailor's opinion and did not make a broader challenge to whether ALJ Wilkerson's findings were supported by substantial evidence. (DN 13-1.) Any discussion of her impairments in the argument section of her brief was limited to solely on her physical impairments. (*Id.* at PageID # 882-83.) Accordingly, the undersigned will focus on the same herein.

ALJ Wilkerson summarized these records by stating that Claimant had severe impairments including cervical and lumbar degenerative disc disease, Morton's neuroma of the right foot, COPD, and obesity and that "[s]ince February 2021, there was some progression in her conditions, such that she has additional limited range of motion, a positive straight leg raise, and she has an antalgic gait." (*Id.* at 23 (citing *id.* at 393).) ALJ Wilkerson concluded, "However, all of the facts tended to show that the claimant could perform light work with additional limitations, consistent with her residual functional capacity as written." (*Id.* at 23-24.) ALJ Wilkerson then noted that the state agency medical consultants adopted ALJ Morholt's RFC, which limited the Claimant to less than a full range of light work. (*Id.* at 25 (citing *id.* at 80-86, 88-94, 96-104, 106-14).) But ALJ Wilkerson found that Claimant's condition had worsened, which warranted some changes from the previous RFC. (*Id.* at 25.) In particular, ALJ Wilkerson added a restriction that Claimant could only stand and walk for four hours total in an eight hour work day for up to thirty minutes at a time. (*Compare id.* at 17, *with id.* at 66.) But both the state agency medical consultants' opinions and ALJ's Morholt's prior decision supported that Claimant was capable of a range of light work and not limited to sedentary work as opined by Dr. Tailor. Claimant's challenge to this conclusion consisted solely of pointing to instances in the record where a provider diagnosed her with an impairment. (DN 13-1, at PageID # 876-78, 882-83.) But the mere existence of symptoms or a diagnosis do not establish functional limitations. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)) ("But not every diagnosable impairment is necessarily disabling."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere diagnosis of obesity does not establish either the condition's severity or its effect on [claimant]'s functional limitations."). Claimant pointed to no instances in the record of a provider placing her on greater functional limitations than that prescribed by ALJ

13

Wilkerson here. In light of the context found elsewhere in the opinion, the undersigned finds that ALJ Wilkerson's articulation of the consistency factor was both sufficient to meet the regulatory requirements and supported by substantial evidence.

Having found that ALJ Wilkerson's discussion comported with 20 C.F.R. §§ 404.1520c, 416.920c and was supported by substantial evidence, the undersigned finds that Claimant has not demonstrated reversible error and will recommend that the decision be affirmed.

### III.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record

July 26, 2024

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all Parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).